■ In the Matter of the Claim of DOMINGO BETANCES, Respondent, v HEXREED INDUSTRIES, INC., et al., Appellants, and STATE INSURANCE FUND et al., Respondents. WORKERS' COMPENSATION BOARD, Respondent.—Levine, J. Appeal from a decision of the Workers' Compensation Board, filed February 2, 1987, which ruled that the State Insurance Fund was not liable for the payment of compensation benefits to claimant.

Hexreed Industries, Inc. (hereinafter the employer) renewed its policy of workers' compensation insurance with the State Insurance Fund (hereinafter SIF) for the period of October 7, 1979 to October 7, 1980. SIF canceled the employer's policy effective January 5, 1980 for nonpayment of the premium. Thereafter, claimant filed a claim for benefits based on a work-related injury he allegedly sustained on February 19, 1980.

The issue presently before us is whether SIF's cancellation complied with the requirements of Workers' Compensation Law § 54 (5). The Workers' Compensation Board determined that SIF properly canceled the employer's compensation insurance policy. This appeal by the employer and the Uninsured Employers' Fund (hereinafter collectively referred to as appellants) ensued.

Appellants contend that SIF failed to prove that a cancellation notice was mailed to the employer by certified or registered mail, return receipt requested, as required by Workers' Compensation Law § 54 (5). In support of their contention, appellants point out that SIF was not able to produce a return receipt for the cancellation notice it claims to have mailed on December 17, 1979. The evidence educed by SIF included a

copy of the notice of cancellation dated December 11, 1979 and a mailing manifest, date stamped by the post office December 17, 1979. There were 16 addressees listed in the manifest. The last one appears to have been crossed off and it is uncontested that only 15 items were mailed. According to SIF, the numbers stamped in the left-hand margin of the manifest were the certified mail numbers assigned to the 15 notices mailed on that date. On the right-hand side of the manifest is a column headed "R.R. Fee" which, according to SIF, itemized the charge incurred in mailing each cancellation notice "return receipt requested".

There was also the testimony of Roberta Gibbs, a senior underwriter for SIF, which detailed the normal office procedures for canceling policies. Gibbs testified that mailing manifests were used exclusively for cancellation notices. Gibbs also testified that a computer is used to print the manifest and the notices to be sent to the employer and the chairman of the Board. The date on the documents reflects the day they were generated by the computer. According to Gibbs, the cancellation notices are checked for accuracy prior to being placed in envelopes for mailing. After this, the notices and the manifest are taken to the post office where the letters are sent by certified mail, return receipt requested. Gibbs, however, could not explain why, in this case, there were only 15 items mailed and 16 entries on the manifest; nor could Gibbs identify who crossed out the last addressee listed on the manifest and when that was done. Hector Giannasca, the employer's president, testified that he never received notice of cancellation from SIF.

Appellants contend that the Board erred in finding that the "cancellation was sent in accordance with established office procedure so 'as to ensure the likelihood' that the notice of cancellation was not only properly addressed and mailed, but also [sent] return receipt requested as mandated by the statute". Specifically, appellants contend that SIF's failure to produce the testimony of the individual who actually mailed the notice and the absence of a return receipt, combined with the conceded discrepancy between the number of notices sent and the number of addressees listed on the manifest, preclude a finding that regular office procedures were followed in this instance which would give rise to a presumption of compliance with the statutory requirements (see, Bossuk v Steinberg, 58 NY2d 916, 919; Nassau Ins. Co. v Murray, 46 NY2d 828, 829-830; Matter of Allen v Bausch & Lomb, 130 AD2d 802, 803). We disagree. The Board was free to credit Gibbs' testimony

and find that a proper mailing was made to the employer in this case *(see, Matter of Adebahr v 3840 Orloff Ave. Corp.,* 106 AD2d 770, 771). Similarly, appellants' reliance on the discrepancy in the number of items mailed and the number of addressees listed on the manifest as support for its contention that no notice was ever sent presented a factual issue within the province of the Board to resolve. In addition, the failure to produce a return receipt does not preclude a finding of proper cancellation *(supra).* The evidence that SIF followed its regular office practice in mailing the notice of cancellation to the employer distinguishes this case from *Matter of Bitterman v Friscos Rest.* (91 AD2d 810) and *Matter of Sarlo v Antona Trucking Co.* (90 AD2d 611), relied on by appellants.

We also reject appellants' contention that Workers' Compensation Law § 54 (5) requires the notice of cancellation to be filed in the office of the chairman of the Board and served on the employer on a particular date which must be specified in the notice of cancellation. The relevant statutory language provides that there shall be no premature cancellation of insurance "until at least ten days after a notice of cancellation * * * *on a date specified in such notice,* shall be filed" with the chairman of the Board and also served on the employer (Workers' Compensation Law § 54 [5]). Contrary to appellants' contention, the requirement of a date to be "specified in [the] notice" has been construed to refer to the date of cancellation and not the date of filing *(see, Matter of Fromer v John St. Serv. Center,* 34 AD2d 1081, 1082; *Matter of Conklin v Byram House Rest.,* 32 AD2d 582, 583, *affd* 30 NY2d 657). This requirement was complied with in the notice sent here. Hence, in our view, the Board's decision must be affirmed.

Decision affirmed, without costs. Mahoney, P. J., Casey, Weiss, Levine and Mercure, JJ., concur.