■ In the Matter of the Claim of BARBARA LAIRD, Claimant, v ALL PRO AIR DELIVERY, INC., et al., Respondents, and PROGRAM RISK MANAGEMENT CLAIM SERVICES, INC., as Successor Administrator of TEAM TRANSPORTATION WORKERS' COMPENSATION TRUST, Appellant. WORKERS' COMPENSATION BOARD, Respondent. [845 NYS2d 493]—

Crew III, J.P. Appeals from a decision and an amended decision of the Workers' Compensation Board, filed July 6, 2005 and February 23, 2006, which ruled that Team Transportation Workers' Compensation Trust was the proper carrier.

In November 1998, decedent sustained certain injuries in a work-related accident that ultimately resulted in his death. After claimant, decedent's widow, filed a claim for workers' compensation death benefits, an issue arose as to whether the employer was insured by its group self-insurance carrier, Team Transportation Workers' Compensation Trust (hereinafter the carrier), on the date of the accident. Specifically, the carrier asserted that the employer's participation in the group self-insurance had been terminated as of May 17, 1997 due to nonpayment of premiums. During the course of the numerous hearings that followed, a Workers' Compensation Law Judge (hereinafter WCLJ) consistently found that the carrier failed to produce sufficient evidence to establish that the employer was served with the notice of termination, as required by Workers' Compensation Law § 50 (3-a) (3), and requested further proof in order to cure the deficiency.

Following applications for review before the Workers' Compensation Board and additional hearings, a panel of the Board again affirmed the WCLJ's finding that the carrier failed to adduce sufficient proof that the employer was served with the applicable notice of termination. In so doing, however, the Board inadvertently cited Workers' Compensation Law § 54 (5) rather than Workers' Compensation Law § 50 (3-a) (3), the lat-

ter of which governs the termination of an insurance policy for employers participating in a group self-insurance plan, as is the case here. As a result, the Board filed an amended decision on February 23, 2006 referencing the correct statutory provision and, further, noting that there was no article number, date or letter linking the receipt for certified mail to the return receipt, both of which were produced at the underlying hearings, and no additional proof that the employer was properly served. This appeal by the carrier ensued.

We affirm. Workers' Compensation Law § 50 (3-a) (3) provides, in relevant part, that "[n]otice of termination of a participating employer shall not be effective until at least ten days after notice of such termination, on a prescribed form, has been either filed in the office of the chairman or sent by certified or registered letter, return receipt requested, and also served in like manner upon the employer." Public policy, in turn, "dictates that the termination or cancellation of insurance contracts under the Workers' Compensation Law be accomplished in strict compliance with the statutory mandates" (*Matter of Sutter v Albany Capitaland Enters.*, 298 AD2d 639, 640-641 [2002]; *see Matter of Cruz v New Millennium Constr. & Restoration Corp.*, 17 AD3d 19, 23 [2005]).

Here, there is no dispute that the carrier served the Board with the notice of termination in a timely and proper fashion and, accordingly, the first prong of the statute has been satisfied. As to the second prong—that the employer was, in fact, served with the notice of termination—the carrier submitted the notice of termination it sent to the Board on May 2, 1997, together with a certified mail receipt bearing that same date and addressed to the employer, as well as an undated return receipt signed by the employer's then president. The carrier also offered testimony from the vice-president of its administrator at the time of the hearing for the purpose of establishing proof of regular mailing procedures.

As the Board correctly observed, although an article number appears on the certified return receipt, no corresponding number appears on the certified mailing receipt or the notice of termination. Hence, there is no common thread among the relevant documents. To that end, this Court previously has held that documentation that merely "shows that a piece of certified mail was sent to the employer without proof in the record to substantiate that the notice was in fact sent, is insufficient" (*Matter of Bitterman v Friscos Rest.*, 91 AD2d 810 [1982]; *see Matter of Lafler v Chautauqua Sales*, 286 AD2d 837, 837-838 [2001]). Similarly, although the employer's president acknowl-

edged that the certified return receipt sent to the employer indeed bore her signature, she also testified that she did not recall receiving the notice of termination and, further, that a search of the employer's records failed to produce the notice or any indication that such otherwise was received, which testimony the Board was free to credit (*see generally Matter of Scimeca v American Overseas Express Intl., Inc.*, 27 AD3d 981, 982 [2006], *lv denied* 7 NY3d 707 [2006]). As to the testimony offered by the carrier's administrator, we note that such testimony could address only the mailing practices of the carrier's administrator at the time of the hearing—not the practices of the administrator at the time the notice of termination allegedly was sent to the employer. For these reasons, we find that the Board's findings in this regard are supported by substantial evidence in the record as a whole. The carrier's remaining contentions, including its assertion that the Board applied an improper standard as to the proof necessary to establish compliance with Workers' Compensation Law § 50 (3-a) (3), have been examined and found to be lacking in merit.

Peters, Spain, Lahtinen and Kane, JJ., concur. Ordered that the decisions are affirmed, without costs.